# EXHIBIT A

Dr. Adarsh Dalal
16 Trudy Drive
Lodi, New Jersey 07644
(201) – 712 – 0550
Plaintiff, *pro se*

RECEIVED

2025 JUN 17 A 9: 11

CIVIL DIVISION
CASE PROCESSING

|  |  |
|---|---|
| DR. ADARSH DALAL,<br><br>                    Plaintiff,<br><br>Vs.<br><br>APPLE, INC.,<br><br>                    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY VICINAGE<br>LAW DIVISION – CIVIL PART<br><br>Docket No.: _____<br><br>CIVIL ACTION<br><br>**VERIFIED COMPLAINT** |

FINANCE DIVISION
BERGEN COUNTY
2025 JUN 16 A 8: 52

## JURISDICTION & VENUE

1. The Superior Court of New Jersey has jurisdiction as this action is brought pursuant to the New Jersey Consumer Fraud Act, <u>N.J.S.</u> 56:8-1 *et seq.*

2. Venue in the Bergen County Vicinage is proper pursuant to <u>R.</u> 4:3-2(a)(3) as the Plaintiff resides in Bergen County.

## PARTIES

3. Plaintiff Dr. Adarsh Dalal ("Plaintiff") is a citizen of New Jersey and a resident of Bergen County.

4. Defendant Apple, Inc. ("Apple") is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014. Apple engages in extensive business and commercial activity in Bergen County, New Jersey, including operating retail stores and marketing and selling its products to Bergen County residents.

DATE FILED 6/16/25
PAYMENT # 3256
CA CK CC MO CG
AMOUNT 250
PAYOR Dalal
BATCH/REF/CASE# 1162

## STATEMENT OF FACTS

### I.    The Apple, Inc. Invasion of Privacy Class Action Lawsuit

5.     In April 2025, the Hon. Jeffrey S. White, U.S.D.J. of the United States District Court for the Northern District of California preliminarily approved a settlement in the class action lawsuit of Lopez et al. v. Apple, Inc., Case No. 4:19-cv-04577 (N.D. Cal.) for $95 million. The class action lawsuit raised claims for violations of the Wiretap Act, invasion of privacy, and breach of contract based on the same facts stated herein.

6.     As a result of Plaintiff's purchase and use of Apple iPhone products, Plaintiff was a member of the class in the aforementioned lawsuit.

7.     On May 15, 2025, Plaintiff determined that the settlement was inadequate and timely opted out of the settlement by sending letters via U.S. mail to the settlement administrator requesting exclusion from the class action.

### II.    Apple's Siri Software and False Privacy Guarantees

8.     Apple is a technology company that designs and manufactures electronic devices including the iPhone, which it sells to consumers throughout the world. The company also designs the software on these devices, including a program known as Siri. As set forth more fully below, Apple's defective devices and Siri software have violated and continue to violate Plaintiff's rights under federal and state law.

9.     Siri is a voice-activated intelligent assistant program that transmits users' voice commands and queries through the Internet and then provides responses. Siri provides users with information in response to questions, plays music, sets alarms, timers and reminders, and can be used to control internet connected devices.

10.     The Siri program is activated by a user saying "Hey, Siri" or by a user performing some other designated action, such as pressing a button for a pre-programmed amount of time.

Once activated, Siri records users' voices and translates the request into code. This code is plugged into an algorithm that determines what information a user is seeking or what task they want performed.

11. Siri devices actively listen for "Hey, Siri" by using speech recognition software that records and analyzes short snippets of audio from the users' surroundings. These audio snippets are stored locally in the Siri devices' random-access memory (RAM). Audio stored on Siri devices' RAM is continuously overwritten as new audio is recorded and analyzed until "Hey, Siri" is detected. The speech recognition software generates a confidence score that the audio contained this phrase. When a Siri device detects a sufficiently high confidence score, it "wakes up," or "activates" Siri. Siri then transmits audio to Apple for analysis for the purpose of ascertaining how to respond to a user request.

12. Siri has been included on all Apple iPhones since October 12, 2011. As of January 2018, Apple claimed that Siri was actively used on over half a billion devices.

13. Apple's Software License Agreements expressly incorporate Apple's Privacy Policy and state that users' information will be treated in accordance with Apple's Privacy Policy. In its Privacy Policy specific to Siri devices, "Ask Siri, Dictation & Privacy", Apple states, " Siri is designed to protect your information and enable you to choose what you share."

14. Prior to the filing of the Lopez class action, Apple's Approach to Privacy, which is expressly incorporated into Apple's Privacy Policy, stated, "personal data should always be protected on [the Siri device] and never shared without [users'] permission." Apple gives assurances of its commitment to protecting users' privacy by stating, "We're always up front about what we collect from you, and we give you the controls to adjust these

settings." Apple's Approach to Privacy webpage explains, "Apps can use Siri to respond

to your requests or send audio to Apple to transcribe to text -- but only if you give your

permission first."

15. In response to privacy related scandals involving competitors, Apple has sought to

distinguish itself by promoting its purportedly strong privacy protections. If an individual

were to ask Siri, "Are you always listening," Siri is programmed by Apple to respond, "I

only listen when you're talking to me." Apple has also run television commercials

declaring "Privacy. That's iPhone" and stating "[i]f privacy matters in your life, it should

matter to the phone your life is on."

16. In July 2018, Congress sent a letter to Apple seeking to determine how the company

protects consumer data. Apple responded with a letter stating, "We believe privacy is a

fundamental human right." Apple's respond also answered the following questions posed

by Congress:

Question 9: Do Apple's iPhone devices have the capability to listen to consumers without
a clear, unambiguous audio trigger?

Apple's Response to Question 9: iPhone doesn't listen to consumers except to recognize
the clear, unambiguous audio trigger "Hey Siri[.]"

Question 9(a): If [Apple's answer to Question 9 is] yes, how is this data used by Apple?
Please describe any use or storage of these data.

Apple's Response to Question 9(a): iPhone doesn't listen to consumers, except to
recognize the clear, unambiguous audio trigger "Hey Siri." As described above, the on-
device speech recognize runs in a short buffer and doesn't record audio or send audio to
the Siri app if "Hey Siri" isn't recognized.

Question 10: Do Apple's iPhone devices collect audio recordings of users without
consent?

Apple's Response to Question 10: No.

4

### III. Apple's Surreptitious Interception, Recording, and Disclosure of Plaintiff's Private Communications

17. Recent whistleblower revelations and admissions by Apple in response to the whistleblowers show that Siri is activated by virtually any sound or noise and that once activated, Siri records everything within the range of the Siri device's microphone. According to these reports, Siri's recordings are sent to Apple's servers.

18. Siri's recordings can be as long as 30 seconds and are accompanied by user data showing location, contact details, and app data. As such, they contain significant amounts of identifying information from which users' identities can be revealed. According to Apple, these recordings are transcribed and reviewed by contractors.

19. Despite Apple's knowledge of these violations of its customers privacy and the companies own SLAs and Privacy Policy, Apple has done nothing to address these violations. Apple has no specific procedures in place to deal with sensitive recordings aside from reporting accidental triggers as a technical problem.

20. Apple further fails to properly evaluate the third party personnel and contractors who review nonconsensual Siri recordings. Through its use of third party contractors to review these Siri recordings, Apple gains an incredible advantage over its competitors.

21. Apple analyzed its surreptitious recordings of users' private conversations to improve Siri's functionality and thereby market and sell more Siri devices and profit from such sales.

22. Apple intentionally uses the contents of Plaintiff's and other users' intercepted communications to improve the functionality of Siri for Apple's own financial and commercial benefit, to develop a virtual assistant superior to Apple's competitors, and to generate substantial profit.

23. Apple's practices herein are outside of the scope of Apple's ordinary course of business because they violate Apple's own policies and are in contravention of the generally understood manner in which voice recognition software like Siri is meant to function.

24. While falsely claiming to have curtailed its unlawful practices, Apple continues to improperly (and without Plaintiff's consent) intercept, record, use, and transmit Plaintiff's and other Siri device users' private communications.

25. Apple has improperly destroyed relevant evidence concerning its unlawful conduct involving Siri in an effort to conceal such misconduct and obstruct Plaintiff's ability to bring and prosecute a civil action. On July 17, 2024, the Hon. Sallie Kim, U.S.M.J. issued spoliation sanctions against Apple for the destruction of recordings relevant to this civil action.

## IV.    Plaintiff's Use of Apple's Siri Devices

26. During and between 2013 and present, Plaintiff has owned and used various iPhones, include an iPhone SE. He has carried his iPhone at all times, including at work, at home, and at doctors' offices.

27. Through its Siri software, Apple intentionally intercepted Plaintiff's private communications without his consent, as it repeatedly activated without Plaintiff uttering the phrase "Hey, Siri". On repeated occasions during and between 2013 and present, Plaintiff has observed Siri triggered into an active listening mode without his use of the phrase " Hey, Siri". During these occasions, Plaintiff was having conversations in which he had a reasonable expectation of privacy.

28. Prior to purchasing his iPhone SE, Plaintiff had seen and relied upon Apple's advertisements regarding Siri's capabilities and functionality. Plaintiff had also, prior to

his purchase of the device, read Apple's representations regarding Siri's activation process during the set up of his iPhone. Plaintiff believed Siri would only be activated upon his utterance of the phrase "Hey, Siri".

29. Based on Apple's privacy guarantees and federal and state laws governing privacy in communications, Plaintiff reasonably believed that Apple's Siri software would not intercept, record, or transmit his communications unless he activated the software with the phrase "Hey Siri". Plaintiff had a reasonable expectation of privacy in his communications and conversations that were unlawfully intercepted, recorded, transmitted, and stored by Apple.

30. Plaintiff never consented to Siri intercepting, recording, transmitting, and storing his private communications in the manner set forth herein.

31. Plaintiff discovered the full extent of Apple's unlawful conduct involving Siri only after the 2025 class action settlement was publicized.

## STATEMENT OF CLAIMS

### COUNT I:
### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S. 56:8-1 *et seq.*)

32. Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

33. During the relevant periods described herein, Defendant Apple made misleading affirmative statements and omitted material facts with the intent that Plaintiff rely on them to purchase iPhones and employed unconscionable commercial practices, specifically by making privacy guarantees while at the same time breaching those privacy guarantees which directly and proximately caused Plaintiff an ascertainable loss.

34. Defendant Apple's misrepresentations and omissions were material because they were likely to and did deceive Plaintiff about the actual cost of Defendant's television and internet services. To his detriment, Plaintiff relied on Apple's misrepresentations and omissions.

35. As a direct and proximate result of Apple's violations of the NJCFA, Plaintiff has suffered and will continue to suffer injury, ascertainable loss of money or property, and monetary and non-monetary damages, including loss of the benefit of his bargain with Apple as he would not have paid Apple for services or would have paid less for such services but for Apple's violations stated herein.

36. Defendant Apple therefore violated the New Jersey Consumer Fraud Act, N.J.S. 56:8-2 and N.J.S. 56:8-2.2, and is liable for damages under N.J.S. 56:8-2.11 and N.J.S. 56:8-19.

## COUNT II:
### VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT
#### (N.J.S. 56:12-14 *et seq.*)

37. Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

38. The representations on Defendant Apple's websites, commercials, advertisements, and constitute consumer notices, signs, and warranties within the meaning of N.J.S. 56:12-15. Through the acts stated herein, Defendant Apple violated N.J.S. 56:12-15 because in the course of its business Defendant Apple offered, displayed and presented written consumer notices, signs, and warranties to Plaintiff that contained provisions that violated his clearly established rights under New Jersey state law. These clearly established rights included the right to be free from unconscionable commercial practices and false and deceptive written statements and omissions in the sale of services, as prohibited by the New Jersey Consumer Fraud Act, N.J.S. 56:8-2, and as set forth in Count I.

39.     Defendant Apple therefore violated the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S. 56:12-15, and is liable for damages under N.J.S. 56:12-17.

### COUNT III:
### UNJUST ENRICHMENT

40.     Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

41.     Plaintiff conferred a monetary benefit upon Apple in the form of unnecessary money paid for the purchase of hardware and software from Apple. Apple benefited from the receipt of Plaintiff's money to which it was not entitled and failed to provide additional services or remuneration in exchange for the additional funds it deceptively received. As a result of Apple's deceptive and unconscionable conduct, Plaintiff suffered actual damages. In equity and good conscience, Apple should not be permitted to retain the money belonging to Plaintiff because Apple obtained it through deceptive conduct and failed to confer an adequate benefit in return.

42.     Apple is therefore liable for damages and must be compelled to disgorge all unlawful proceeds it received.

### COUNT IV:
### BREACH OF IMPLIED CONTRACT

43.     Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

44.     When Plaintiff purchased hardware and software services from Apple, there existed a contract and an implied duty of good faith and faith dealing in such contract. Through the acts stated herein, Apple violated that duty of good faith and fair dealing, thereby breaching the implied contrast between itself and Plaintiff.

45.     Plaintiff fully performed his obligation under the implied contract. Apple breached its implied contract with Plaintiff by violating the duty of good faith and fair dealing by making

privacy guarantees to Plaintiff while at the same time breaching those privacy guarantees. Specifically, Defendant Apple misrepresented, omitted, actively concealed, and failed to adequately disclose the true nature of its Siri software and the fact that it recorded private conversations between Plaintiff and others. Apple had a duty to disclose this information because it had exclusive knowledge of material information that was unknown to Plaintiff, it concealed material information from Plaintiff, and because it made representations which were false and misleading absent the omitted information.

46.   As a direct and proximate cause of Apple's breach of the implied contract, Plaintiff sustained the damages and injuries stated herein and Apple is therefore liable for damages.

## COUNT V:
## INVASION OF PRIVACY

47.   Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

48.   During and between 2013 and present, through the unlawful recording of Plaintiff's private communications, Apple intentionally invaded Plaintiff's privacy by intruding upon Plaintiff's solitude and seclusion of his private affairs in a manner that would be highly offensive to a reasonable person.

49.   As a direct and proximate cause of Apple's invasion of privacy through intrusion upon Plaintiff's seclusion, Plaintiff sustained the damages and injuries stated herein and Apple is therefore liable for damages.

## COUNT VI:
## VIOLATION OF THE WIRETAP ACT
## (18 U.S.C. § 2510 et seq.)

50.   Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

51.   During and between 2013 and present, Apple intentionally intercepted and endeavored to intercept wire and oral communications between Plaintiff and other persons in violation of 18 U.S.C. § 2511(1)(a).

52.   During and between 2013 and present, Apple intentionally used and endeavored to use an electronic device oral communications between Plaintiff and other persons where the electronic device was affixed to and transmitted a signal through a wire and Apple knew that the electronic device was transported in interstate commerce in violation of 18 U.S.C. § 2511(1)(b).

53.   During and between 2013 and present, Apple intentionally disclosed and endeavored to disclose to third party contractors wire and oral communications between Plaintiff and other persons knowing that such information was obtained through the unlawful interception of those wire and oral communications in violation of 18 U.S.C. § 2511(1)(c).

54.   During and between 2013 and present, Apple intentionally used and endeavored to use the contents of wire and oral communications between Plaintiff and other persons knowing or having reason to know that the information was obtained through the unlawful interception of those wire and oral communications in violation of 18 U.S.C. § 2511(1)(d).

55.   Each interception, use of electronic device for the interception, disclosure, and use of each of Plaintiff's communications constitutes a separate and distinct violation of the Federal Wiretap Act.

56.   Defendant Apple therefore violated the Federal Wiretap Act and are liable for damages under 18 U.S.C. § 2520(b).

**COUNT VII:**

## VIOLATION OF THE NEW JERSEY WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT
### (N.J.S. 2A:156-1 et seq.)

57.  Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

58.  During and between 2013 and present, Apple purposely intercepted and endeavored to intercept wire and oral communications between Plaintiff and other persons in violation of N.J.S. 2A:156-3(a).

59.  During and between 2013 and present, Apple purposely disclosed and endeavored to disclose to third party contractors the contents of wire and oral communications between Plaintiff and other persons knowing that such information was obtained through the unlawful interception of those wire and oral communications in violation of N.J.S. 2A:156-3(b).

60.  During and between 2013 and present, Apple purposely used and endeavored to use the contents of wire and oral communications between Plaintiff and other persons knowing or having reason to know that the information was obtained through the unlawful interception of those wire and oral communications in violation of N.J.S. 2A:156-3(c).

61.  Each interception, disclosure, and use of each of Plaintiff's communications constitutes a separate and distinct violation of the New Jersey Wiretapping and Electronic Surveillance Control Act.

62.  Defendant Apple therefore violated the New Jersey Wiretapping and Electronic Surveillance Control Act are liable for damages under N.J.S. 2A:156A-24.

### COUNT VIII:
### BREACH OF CONTRACT

63.  Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

64. Plaintiff entered into a contact with Apple by purchasing a Siri device which is subject to Apple's SLAs incorporated Privacy Policies. Plaintiff fully complied with regard to his obligations under the SLA. By recording and disclosing to third parties Plaintiff's private conversations without his consent, Apple breached material terms of the SLA and incorporated Privacy Policies.

65. As a result of Apple's breach of the SLA and Privacy Policy, Plaintiff suffered damages. Specifically, the services Plaintiff received in exchange for the purchase price of his Siri device was worth less than the services he agreed to accept because Plaintiff's communications were recorded without his consent and divulged to third parties. Plaintiff would not have purchased or would not have paid as a high a price for his Siri device if he had known Apple would breach the SLA and Privacy Policy by intercepting, recording, and disclosing his private communications.

## DEMAND FOR RELIEF

ACCORDINGLY, Plaintiff petitions this Court for judgment as follows:

a) Finding that Defendant Apple committed the acts or omissions set forth in this Complaint;

b) Finding that such acts or omissions constitute breach of contract, breach of implied contract, unjust enrichment, the Wiretap Act, invasion of privacy, violations of the New Jersey Consumer Fraud Act, N.J.S. 56:8-2, and the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S. 56:12-14.

c) Granting Plaintiff appropriate equitable relief, including preliminary and permanent injunctive relief barring Defendants from engaging in the practices outlined in this Complaint;

d) Granting Plaintiff compensatory and consequential damages in an amount to be determined by a jury;

e) Granting Plaintiff treble damages in accordance with N.J.S. 56:8-19;

f) Granting Plaintiff statutory damages in accordance with N.J.S. 56:14-17;

g) Granting Plaintiff punitive damages in an amount to be determined by a jury;

h) Granting Plaintiff nominal damages;

i) Granting Plaintiff reasonable attorneys' fees, expenses, and costs in accordance with N.J.S. 56:8-19 and N.J.S. 56:12-17; and

j) Affording Plaintiff any other relief deemed just and appropriate by the Court.

## JURY TRIAL DEMAND

Plaintiff demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

## RULE 4:5-1(b)(2) CERTIFICATION

I certify that the matter in controversy is not the subject of any other civil action in any court of this State against Defendants or any arbitration proceeding against Defendants, nor is any other civil action or arbitration proceeding contemplated. I certify that Plaintiff is not aware of any other party who should be joined in this action at the current time.

## DESIGNATION OF TRIAL COUNSEL
### (R. 4:5-1(c))

Plaintiff Dr. Adarsh Dalal is hereby designated as trial counsel for this matter.

Dr. Adarsh Dalal
Plaintiff, *pro se*

Dated:        June 4, 2025

14



New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

## For Use by Clerk's Office Only

| Payment type ☐ check ☐ charge ☐ cash | Charge/Check Number | Amount $ | Overpayment $ | Batch Number |
|---|---|---|---|---|

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| DR. ADARSH DALAL | (201)-712-0550 | BERGEN |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| N/A | |

| Office Address - Street | City | State | Zip |
|---|---|---|---|
| 16 TRUDY DRIVE | LODI | NJ | 07644 |

| Document Type | Jury Demand |
|---|---|
| VERIFIED COMPLAINT | ☑ Yes   ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| DR. ADARSH DALAL, PLAINTIFF | DR. ADARSH DALAL v. APPLE, INC. |

Case Type Number (See page 3 for listing) __606__

| | | |
|---|---|---|
| Are sexual abuse claims alleged? | ☐ Yes | ☑ No |
| Does this case involve claims related to COVID-19? | ☐ Yes | ☑ No |
| Is this a professional malpractice case? | ☐ Yes | ☑ No |
| If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. | | |

| Related Cases Pending? | ☐ Yes | ☑ No |
|---|---|---|
| If "Yes," list docket numbers | | |

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ☐ Yes | ☑ No |
|---|---|---|

| Name of defendant's primary insurance company (if known) | ☐ None | ☑ Unknown |
|---|---|---|

## The Information Provided on This Form Cannot be Introduced into Evidence.

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?          ☐ Yes ☑ No
  If "Yes," is that relationship:
    ☐ Employer/Employee ☐ Friend/Neighbor ☐ Familial ☐ Business
    ☐ Other (explain) _____

Does the statute governing this case provide for payment of fees ☑ Yes ☐ No by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

♿ Do you or your client need any disability accommodations? ☐ Yes ☑ No If yes, please identify the requested accommodation:

  Will an interpreter be needed?                    ☐ Yes        ☑ No
    If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: _Adarsh Dalal_

## Civil Case Information Statement (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1
### CASE TYPES
(Choose one and enter number of case type in appropriate space on page 1.)

## Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

## Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) 699 |
| | Tort – Other |

## Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases 617 |
| | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 271 | Accutane/Isotretinoin |
| 281 | Bristol-Myers Squibb Environmental |
| 282 | Fosamax |
| 285 | Stryker Trident Hip Implants |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 299 | Olmesartan Medoxomil Medications/Benicar |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 625 | Firefighter Hearing Loss Litigation |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 632 | HealthPlus Surgery Center |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action**      ☐ **Title 59**      ☑ **Consumer Fraud**

Dr. Adarsh Dalal
16 Trudy Drive
Lodi, NJ 07644

June 4, 2025

**VIA U.S. MAIL**
Civil Case Processing Office
Bergen County Superior Court
10 Main Street
Hackensack, NJ 07601

RE:   **Filing of Complaint / New Civil Action**

Dear Civil Case Processing Office:

Please find enclosed for filing two copies of the following documents:

1. Civil Case Information Statement
2. Complaint

A check for the filing fee of $250 has been enclosed.

Please forward a conformed copy of the above documents and any Orders to my address above.

Thank you for your attention to this matter.

Respectfully submitted:

_____ Adarsh Dalal
Dr. Adarsh Dalal
Plaintiff, *pro se*

Enc.

```
BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK      NJ 07601-7680
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 221-0700
COURT HOURS  8:30 AM - 4:30 PM

                        DATE:   JUNE 17, 2025
                        RE:     DALAL ADARSH  VS APPLE, INC
                        DOCKET: BER L -004009 25

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON GREGG A. PADOVANO

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (201) 221-0700 EXT 25683.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:

                                ADARSH DALAL
                                16 TRUDY DRIVE
                                LODI            NJ 07644



JURHEN0
```